**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**



----------------------------------------------X
IN RE:                                          :     **Chapter 7**
**NARCO FREEDOM INC**                           :     **Case: 16-10123-smb**
Debtor:                                         :
----------------------------------------------X

MOTION IN OPPOSITION OF TRUSTEE'S ORDER TO SHOW CAUSE TO CONTINUE TO EMPLOY THE TEMPORARY RECEIVER AND HER COUNSEL GARFINKEL WILD UNDER THIS VOLUNTARY FILING OF THE BANKRUPTCY AS SHOULD BE EXCUSED UNDER SECTION 543(d) SUBJECT TO THE BELOW SUPPORTING FACTS.

1. Lori Lapin Jones, was appointed in the Southern District of New York to oversee an operating corporation that had sustained significant financial distress by a False Claims action commenced by the US Districts Attorney's office, in which such action is "stayed indefinitely" by the court. The matter of the alleged false claims has yet to go to trial and/or be found to be a valid cause of action and successful in the prosecution of such. It seems that such action may never make it to trial, therefore a great injustice has been already created against a 43-year-old organization that have an excellent reputation in the community in which it served.
2. New York State Office of Alcoholism and Substance Services (Arlene "Sanchez") as well as the Office of the Medicaid Inspector general had at the time proposed to bring in "their favorite operator" ACACIA Network to be paid to operate Narco Freedom during this transition plan, in which they had agreed to release all Medicaid withholds, and allow ACACIA to operate Narco Freedom under their management arm.
3. However, the NYS Agencies failed to mention the fact that ACACIA network is operated by a very politically connected executive team in which has extensive questionable ties into these two State Agencies. Also that recent NYS internal investigations led by the NYS Controller & DOI revealed lack of compliance and lack of management of many of their facilities, and ranking their housing programs as being in "despair."
4. Acacia network also provides the same exact housing services that Narco Freedom has been accused of providing, as alleged in this USA False Claims Act. However, their past and present practices have cost the tax payers in excess of 10-12X the amount of public funds then that of Narco Freedom's operations. 90% of their programs were non-licensed as far as housing was concerned, but rather procured under "emergency housing contracts", in which less services are provided, (no or little oversight) yet instead of the HRA allowance of $215 a month Narco Freedom was receiving, ACACIA would get subsidies in excess of $1000's, yet most of their contracts under NYC Department of Homeless Services actually

paid ACACIA the emergency rate of $3500 per month and this included nothing other than housing the homeless individual.
5. Meals, personal allowances, healthcare treatment, counseling, security, are in excess of this amount paid by our State and City government agencies.
6. The source of patients has always been identical to Narco freedom's, and were provided by engaging patients in their "health-home" or through the NYC Department of Parole.
7. Yet the court appointed receiver still under the so called "stabilization plan", later known as the "transition plan" when the court appointed receiver failed to get the Medicaid monies due and owing as negotiated released so Narco Freedom can continue to operate their services, as they have for the past 43 years. While billing the organization hundreds of thousands of dollars in unnecessary and excessive legal fees, and has failed in the process to transition the services of Narco freedom to competent and "proven effective" providers.
8. In her short tenure as the court appointed receiver she has managed to run a 43-year-old successful organization into disaster. Over 14 patients have died in this "transition plan". This is more patients that have died in the care of Narco freedom in the 43 years in existence.
9. Yet the receiver continues to state of the record that she uses "her better judgement and good care when making decisions for the company." In a "sane and reasonable person's" interpretation of Ms. Jones and her attorney's allegedly "better judgement" would expect someone with comparable judgement with the amount of people who have suffered wither by dying, going back to jail while on parole, becoming homeless, relapsing due to the fact patients were not mandated to get treatment as the NYC Drugs courts and their administrative judges had ordered such, including the 450 staff members now without jobs, the 1000 patients left without shelter, and a proven cost effective system that has years of research based evidence to support the design of Narco freedom as it was the leader in NYS for the model of the "patient centered care" mandated by US HHS and the Affordable Care act.
10. Because of Ms. Jones actions to date justice will never have a chance to be shown that the alleged false claims action brought, was in fact misinterpreted, and politically motivated by NYS agencies in order for their "Favored Operators to Take over"
11. The employees of Narco Freedom were entitled to accrued Sick, Vacation, and Personal days. Ms. Jones as stated "In her better judgment" she considers these obligations to be a valid obligation of the corporation. As stated on the record, attached to this motion. Please also see the attached "examples" of the yearly filed 990's as submitted with the IRS every year.
12. Every single 990 has been independently audited by outside forensic auditors and each year there is a line item "accrued compensation". The accrued compensation is accrued by a formula as provided attached to this motion that shows that the "accrued time" is not biased and applied to all employees universally.
13. Under USDOL law when a benefit, or wages is provided to an employee and listed on Federal Tax Returns as a valid accrued expense that is also of public information by doing a simple "guidestar.org search.

14. This money owed is a valid and enforceable priority claim as a wage, and given that such was separated out each year under a "defined benefit plan" such monies are due and owing at any time the employee asks for it. Attached "EX-2a" Such wages are not subject to any restriction under a bankruptcy, and wages are not discriminatory.
15. Such claims for wages have been claimed to the SDNY over a year ago by some claimants, yet Ms. Jones and her retained attorneys seem to have liquidated out employee's assets in which she was not entitled to. Those assets must be paid prior to any other claims immediately. I have also included an "exhibit 2b" uploaded and claimed under the prior SDNY action in which the receiver claimed that our rights as employees were due and owing wages would not be prejudiced by the filing of the bankruptcy.
16. The trustee's proposed attorney's Garfunkel Wild, who have acted in complete disregard of the obligations of the interests of the applicable creditors and those of the Debtors obligations under the district court's action.
17. Garfunkel Wild, the Receiver, Lori Jones, and their other appointed counsel and professional Agents have essentially liquidated the estate prior to bring this action to this venue of bankruptcy court.
18. They have intentionally committed fraud and diversion tactics, and continue to do so by imposing an extended "stay" in the district court, while relying upon the automatic stay in the bankruptcy action in which the instant action of the Chapter 11 in which is pointless given there are "no such operations still in existence by the debtor in which Narco Freedom has been engaged prior to the receivership.
19. Their continued application for compensation under bankruptcy priority statue in violation of US section 503 as excessive fees and they are subject to a carve-back especially when they have acted negligently by liquidating out assets in which they were not legally entitled to.
20. Which will bring up another issue in this bankruptcy proceeding, and it being defined as "a core proceeding." Many claims in which where priority claims under the district court, have been unjustly liquidated that are "exempt" property in which is "non-bankruptcy law". Yet as required by the filing party, Garfunkel wild, as filing party on behalf of the debtor and the now trustee, have failed to carry over the "Priority Claims" not subject to the bankruptcy's estate and other creditors, yet the causes of actions were ordered by the District court to be handled by the bankruptcy Courts.
21. The receiver and her Counsel have failed not only in the district court to present that the "defined Benefit Plans" and/or Employee's Wages (as defined by the Receiver Lori Jones, per attached Minute Entry) are at issue in a bankruptcy proceeding as to jurisdiction, in which such distribution by law should have not been prejudiced and distributed at the time of the employee's termination/ prior to the bankruptcy action.
22. Such plans are defined by annually filed 5500's and/or including the organizations 990's stating such "accrued liability" not subject to forfeiture under the statutory plans anti-retaliatory clause, as such monies are "wages" accrued and not the property in anyway of the debtor or their estate. (There has been mention by the receiver under docket minutes that such monies maybe in dispute by regulatory authority (state/federal) yet, the language

of such monies are not subject to forfeiture under protected 26CFR § 1.401(a)—13(b)(1) (1991)

23. "No benefit, right or interest" of any participant "shall be subject to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge, seizure, attachment or other legal, equitable or other process." 541(c)(2)

24. ERISA plans and or "defined benefit plans" are subject to the (ERISA anti-alienation provision constitutes "applicable non-bankruptcy law"), *Velis* v. *Kardanis*, 949 F. 2d 78 (CA3 1991) (same); *Shumate* v. *Patterson*, 943 F.2d 362 (CA4 1991)

25. Even those courts that would have limited § 541(c)(2) to state law acknowledge the breadth of the § 522(d)(10)(E) exemption. See *In re Goff*, 706 F.2d, at 587 (noting that § 522(d)(10)(E) "reaches a broad array of employment benefits, and exempts both qualified and unqualified pension plans") *In re Graham*, 726 F. 2d, at 1272 (observing that "the § 522(d)(10)(E) exemption would apply to non-ERISA plans as well as to qualified ERISA plans").

26. Jason Brand had brought an action to the district court to enforce his rights under a defined benefit, yet this plan falls within the "Welfare Benefit" protection of ERISA. Such was brought as a matter to prevent prejudice to statue, as allowed under the initial TRO issued by Hon. Koeltl of the SDNY district court, such action again has been untimely stayed and thus has prejudiced his rights to collection under the applicable time barred claims process governed under ERISA for a disability claim.

27. I brought the claim against the associated ERISA and Non-ERISA defined benefit plans, in which are clearly" non-bankruptcy" funds that may be liquidated, as they are outside the estate. Suit was brought in EDNY under the ERISA statue to meet a one-year statue, however, according to USDOL law, such money is not subject to unreasonable delay in withdrawal especially when I have defined my withdrawal do to a "hardship. Such money again as stated in the above case law are not subject to carve-back or forfeiture, as a matter of law. I have reason to believe the court appointed receiver Ms. Jones has liquidated out these "protected funds" in which the district court is staying that she cannot be held liable. The court sites the Barton Case, I wish to point out two situations in which a court appointed receiver can be liable under the Barton Doctrine. Under USC 959(a) claims can be made against a court appointed receiver when there is knowledge (claims have been made prior to her appointment in her capacity, so she was clearly aware) and harm is caused to third parties or under the "Ultra Vivea Act" when there is wrongful seizure or dissipation of a third parties assets.

28. Ms. Jones and Garfunkel wild have contradicted themselves continuously in district court. Ms. Jones says on the record, that sick/vacation time is a legal liability and its treated like wages. Ms. Jones and her counsel have engaged an expensive auditing accountant, but I do believe that the "receiver and her co-counsel also have the ability the "read". Every 990 that is filed with the IRS has a "long Term Accrued Compensation Expense", this money has been audited and been reported to the government as wages and a valid obligation always, it's clearly not a Core-Bankruptcy debt. Its defined as a wage, and due and owing to the staff, without prejudice. The plan and accrued time is a defined benefit that is accrued under a valid enforceable contract that is universal to all employees, as the formula that was used by each employee to achieve their accrued time was based upon a company policy that is nondiscriminatory and also is subject to a non-retaliatory clause, just as each and every Pension and welfare benefit plan covered under Narco Freedom.

29. The automatic stay of the bankruptcy court does not have jurisdiction over non-bankruptcy assets, however The District court asked that this claim be made here. The parties are no looking to negotiate out a valid debt they are entitled to, they want it paid in full, and some attorneys would like their fees paid in their attempts in obtaining this legally binding obligation.
30. This action by the receiver Lori Jones, her Counsel Garfunkel Wild, and additional counsel Smith and Downey as employment counsel in which millions of dollars of un-necessary legal fees have been expensed. Being an appointed officer of the court, so many times, I am very such this is not the first time, Ms. Jones or her counsel have run into a similar situation.
31. Actually, Ms. Jones recognized such as a valid debt., yet paid out some time in a discriminatory matter. Ms. Jones does not have the power to create her own rules when it comes to established law. She has an obligation to the receivership and the parties that are affected by such, if there is a question of a regulatory authority right to carve backs, that's not Ms. Jones issue, and she needed to just deal with her responsibility to the court. There is no final verdict against anyone who is claiming their wages or accrued time/ pensions.
32. Again, Ms. Jones does not have the authority to challenge already valid debts that are not property of the receivership. Her "alleged good judgement again has shown that she has acted contrary to her appointed role as an officer of the court. If such money was liquidated negligently, she is liable for such monies, it takes priority over all other outstanding debt as a matter of law.
33. Ninety percent of the expenses in which Ms. Jones, Garfunkel Wild and her other professionals were considered covered expenses under the in place Philadelphia Insurance policies, in which the defense costs are outside the limits of liabilities. Claims to the carriers for the associated actions as considered "Covered losses" under the broad spectrum Insurance package that.
34. Yet, despite the insurance coverage and the associated claims made against the policy within the reporting period, such fees were withdrawn from the operating account and as well as from the accrual's protected from being liquidated as stated above.
35. <u>I completely contest the ongoing depletion of assets in which has been illegally and unjustly diverted.</u> Such actions are crimes that fall under the NYS Insurance law. Claims were made for such expenses, the insurance policies are issued as <u>"Duty to defend Policies" as well as such claims have been made during the reporting period and the extended reporting period.</u>
36. I request that the Bankruptcy Court Appointed Trustee, Mr. Neilson bring in his own forensic accountants and do a complete audit of the funds depleted to date since the receiver was appointed under the District court, and freeze further disbursements to these firms until a complete audit is provided to the US Attorney's Office and the NYS Department of Law as well as a public record as required under the Bankruptcy Protection Act's Public disclosure laws.
37. *This Motion shall move the Court to allow a FOIL Request action to be placed on the docket for a full accounting and disclosure statement as allowed under Federal Civil Procedure Law 26.3 all interested parties, especially the Priority Claimant's and their counsel have access to see if further claw-back's should be made as a matter of law.*
38. The government has brought a FCA action against Narco Freedom, and I am assuming they plan on attempting to try and prove their case, and claim damages, however there are

monies in which they cannot and do not as a matter of law have a right to forfeiture and/or attach. Such funds are considered protected and act as a priority claims over any government fines or "alleged money" due.

39. I am not a party of the FCA suit, yet I can say as a matter of fact the actions of the receivership in the District court, and how such monies have been spent compared to when Narco Freedom was in business and operating as it has for the past 40+ years have been a deliberate intention to destroy and end the business.

40. Narco Freedom was by no means in Financial Ruin when I left the company under FMLA in November, 2014 per financial statements as Ms. Jones has stated on the record, yet quite the contrary.

41. It was providing treatment and housing (Under the Affordable Care Act, and the NYS & Federal Medicaid reimbursement standards under a "patient Centered model."

42. SAMSHA and NYS DOMH has repeatedly stated that they use "research proven" and effective methods' to engage the patient and prevent the chronically ill from costing our country an exorbitant high cost in emergency care. "The Patient Centered Model."

43. HHS and NYS Medicaid has for years have funded and accepted the fact that housing is a statistically researched based necessity in order to treat the "disabled population. Especially those who suffer from Chemical Dependency, it a CORE concept that housing must be provided as a "part of the treatment model." 2012 SAMSHA – website.

44. Narco freedom's model was rather the pioneer in which our treatment programs are run throughout the world, and this was concluded by testimony at the SDNY District Court Case by Columbia University's Research Department. Narco Freedom's model worked, and was substantially the least cost of any other model in existence.

45. The Medicaid system has established that housing is an essential to the success of many different disabled populations and the costs to house the patients have all been paid by our federal government as a need component of the "patient Centered Care Model."

46. Yet under the Narco Freedom model, Narco Freedom would collect a simple $215 a month to house their patients as part as their treatment. Narco Freedom is NOT a housing provider, it has always been a Substance Abuse Treatment Provider, the housing component has not an enticement, it was rather a component of the successful treatment program in which Narco Freedom incorporated into their treatment model. If we want to take about the stark laws, the point below, sounds a little more enticing then the alleged benefit Narco Freedom received.

47. Don't think for a second, the $2500-3500 a month ACACIA Network gets includes anything besides a bed! It actually includes less then Narco at the $215 HRA Allowance.

48. ACACIA Network will never be a successful treatment provider as Narco freedom has been since 1971, the operators of ACACIA Network are a bunch of lobbyists, their program's are politically motivated, the backgrounds of the operators are nothing to brag about and their performance over the last 7 years or so they have been in control after forcefully dismantling competing businesses utilizing their political clout, has been highly publicized and not something a person does when "their hearts" are supposed to controlling the mission of the corporation, not their "wallets."

49. I think given the management and operators of Narco Freedom have been the same since the early 70's and they treated nearly 10% of the State's substance abusers at the least cost with the highest outcomes, may say something?

50. One thing it says for sure, ACACIA Network and all agencies that are receiving the reimbursements they have been is a Scam, clearly!
51. Narco Freedom's model was a threat to competing providers, Narco Freedom needed to be extinguished fast. The only way to take a company with the roots in the community as Narco Freedom has had for 40+ years. Was the only way Raul Russi and his sidekick Ex Bronx County Clerk partner, was to use their clout and hurt the innocent. Shocking, more corrupt political figures. Yet, google the animals, there is no secret to any of it.
52. They are a bunch of bully's who take down the good by using their power to discredit its leadership, in the most desperate demeaning way. Welcome to ACACIA Network Enterprise. Do another google search of the relationships between their regulating agencies and who works for which. Specifically - OASAS and OMIG. (There are plenty others)
53. Yet, at the end of this circus, the ones who have caused this complete injustice MUST be held accountable for their actions!
54. Take a simple look as the management of ACACIA Network, the head Raul Russi, the disgraced Politico Powerhouse who uses his various 501c3 as his money laundering business.
55. This guy was around during the enactment of the Rockefeller laws, shocking he would want all the Department of Parole Contracts, he was the head of the alternative sentencing in the department of parole, after the poor Buffalo cop took a bullet and survived. (Unfortunately many of his organization's patients aren't as lucky under his command, as it is shown his lack of morality and compassion, but his criminal intent still exists even back to when the moron let Guy Vella out of jail after 3 months of a 1-year sentence.)
56. It is strange that the Receivership and their elected successor of Narco Freedom are both ABOVE the law!
57. ACACIA Network has so many ex-officials in every single State & City agency in which millions if not billions of emergency non-bid contracts somehow make it into the various agencies ACACIA has taken over the last few years.
58. What other non-profits are you aware that get to take over management and procurement of HHC entities. Heritage House, Barbie Health Center? These are NYC HHC centers, why is ACACIA being paid management fees (Maybe Russi's friend Arlene Sanchez had something to do with this? Ohh yeah her husband ran Lincoln hospital and these entities were awarded to Russi right before he stepped down to leave to run an out of state private hospital.
59. Rubin Media RC Solutions (old CEO of Promesa, now is a consultant, and a landlord of ACACIA Network's buildings – remember ACACIA , Promesa they are all 501c3's, can this be a "conflict of interest"?) (There are quite a few, I can go on my days on their corruption, yet I'll leave some to the imagination to the US Attorney and the NYS Charities Bureau to have fun with).
60. United Bronx Parents, That was another creative takeover by Mr. Russi, , similar to Narco Freedom, all he did was start grabbing their funded programs, get Medicaid to hold back their funds and the low-life grabbed the organization right from under a woman that dedicated her life to her organization.
61. Mr. Russi is a snake, and really couldn't care about the patients, or anyone but himself. Mr., Russi, grabs the programs and creates a management company or two, some 501c'3 and some for-profit, and the money gets laundered to whoever it needs to.

62. Buffalo was another place Mr. Russi decided to bypass the rules with Ms. Sanchez. When you have a buddy that the head of the agency that grants 822 licenses when they are literally impossible to get, yet one-day no one knows a thing and the DEA grants a license to dispense methadone and the State produces a OASAS 822 license without following any regulations, because Mr. Russi has a lot of power, and money in which he is very good at laundering!
63. How about the Bronx Capri Hotel, no community support, one day its closed the next it's a homeless shelter, no license, emergency contract under DHS, no knows a thing. Across the street from a school with class 1 sex offenders.
64. Strange how he has people from DHS on his payroll right after they leave DHS. What happened to the NYS public officers law, I thought there was restrictions in place to prevent public corruption?
65. There was a waiting period, and certain disclosure laws in effect for everyone else, not Raul, he is the king I guess he has the power to do as he pleases!
66. The outcome, the Receiver and her transition team took over 1000 homeless substance abusers who were mandated to Narco Freedom's housing and Narco Freedom's treatment centers by NYC treatment courts. (Keep in mind the "NYC Treatment Courts" were responsible for the referral to the treatment provider" The Parolees were mandated by the City to the program! Narco Freedom again is a "Treatment Center" that provides housing at a loss to the company in order to succeed at its Core business of abstinence!"
67. Trust me, if DHS gave Narco the 2500-3500 a month we would have been very happy to take it. I tried for over 7 years to get a contract with them, but I had no one on Narco Freedom's payroll, so It wasn't happening.
68. It's all documented, The NYS Treatment courts creates the "Treatment Plans" (How many days per week the client is to go to treatment) the treatment Courts did their own Drug Testing, and they did their own independent monitoring, this is for all referrals to any program.
69. Why would NYS Department of Parole send so many clients to Narco Freedom? They had a system that worked, they had beds available, because the beds were part of the treatment, once an individual graduated his treatment. They had the tools to become productive individuals of society.
70. If the government actually examined the process in which the treatment was mandated, and they looked at the costs and the outcome, Narco Freedom was not a 300 million a year corporation a year like ACACIA, they were more like 30 million, yet, compare the outcomes between the two corporations. It is quite outstanding!
71. In the so called Receivers "Transition Plan" I'll change the name to the Final Transition plan for 13 patients who died as a direct result of the laying off of staff and mismanagement in-conjunction of the receiver and ACACIA network. (How they sleep at night?)
72. The fact that patients clearly had a substance abuse problem per the NYC Treatment Courts and confirmed by Narco Freedom, & The Dept. of Parole. (all agencies had different brand drug tests and labs, so it is not a conspiracy!)
73. Upon false information from OASAS & NYS OMH and somehow some lady Pat Mattel: (who no even knew existed until the stupid lady perjured herself in federal court) who is part of the Funneling of the money for the "ACACIA Criminal Enterprise" (Pam" Welcome to the club, sometimes it's best to remain silent, just a piece of advice, enjoy the attention!)

74. Thirteen Lives perished as a result of false accusations, the government can point figures all around the room, but to me "human life" does not have a value on it. 400 Staff members lose their job; 1000 people lose shelter. and Lori Jones keeps reminding everyone on record of "her "good Judgement"
75. There was an obligation by the receivership action, at least I thought it was to preserve the business while the 40+ year old organization defended itself against this FALSE FCA suit.
76. The court needs to understand that by continuing to employ the receiver, the court continues to bleed a company that has valid obligations
77. I feel the trustee is more than capable to handle this Bankruptcy in house with his very capable law firm, as I feel he will find a lot of conflicts in which will need to be clawed back.
78. Ms. Jones, Garfunkel Wild, Smith & Downey, the party is over, you have hurt enough people. I feel this bankruptcy proceeding needs to be handled separate and distinct otherwise justice cannot be granted.
79. If this bankruptcy is "in the best interests of the debtor and its creditors" the trustee has a great deal of responsibility to stop the bleeding, and collect the improper and excess billing by these Professionals.
80. The claims made by the landlords are not valid for additional rent. The Original lease agreements have a 90-day out clause for any reason. Why rent was continuously being paid and why they have claims pending in the court, needs to be looked at, and claw-back action needs to be made.
81. The Narco Freedom Property at 2640 Third Avenue is occupied by Samaritan Village, please provide statements that rent has been received for the rental of the property and that such utilities and all insurance, staff and expenses as well as maintenance has been provided while the property has been operated by a competitor. (I want to assume that another operator is paying market rent to Narco Freedom and all expenses for using space Narco Freedom pays a mortgage and costs on?
82. I am aware that insurance coverage for the organization was still being paid and in effect while other agencies were in possession of the Narco Freedom buildings, please provide an accounting showing that Narco Freedom was reimbursed for those expenses. Otherwise I will assume if these organizations are not reimbursing Narco freedom, then I am sure the agencies are getting paid for such expenses and making money on invalid debt, which called for a FCA suit.
83. I have an open claim against Narco Freedom for property that was not returned to me that was at 1735 West Farms road aka 1708 Boone Ave Bronx, all furniture, tools, materials, vehicles, and trailers and plows were mine. Yet I have yet to be provided such. Attached is an open list for property that was yet to be returned, there is a filed insurance claim in which needs to be settled prior to bankruptcy and/or the equipment vehicles returned.
84. There is a $98,000 check that was approved by the board to pay Winston and Strawn in December 2014, the board approved the payment, I am aware it was drawn and signed, yet from my understanding an employee of yours decided on their own to not send it out. This check was again approved and processed by the board, and I have an agreement with Narco Freedom as all the staff does that is part of the NYS Case in which the staff has been indemnified by the corporation and agreed to advance legal fees as required. That check needs to be paid, as it's a legal debt, that was approved and disappeared?
85. My ERISA disability plan from my understanding is now an Insurance policy per 5500's, being a ERISA plan as stated above, such would not be subject to the stay in place in the

district court or the bankruptcy court. Given it is an insurance product and the district court ruled there is no enforceable fidutuary, I request leave from the court to modify the claim to include just Cigna Life Insurance Company, as insured, and pursue my claim in EDNY under Hon Azrack. Please provide an order allowing me to proceed against Cigna Life Insurance Company - The Narco Freedom ERISA Long Term Life Insurance Company plan, I have been unjustly prejudiced by the time that has elapsed, so I ask that this request be expedited without prejudice under ERISA statue.

No other request has been made for the relief stated within.

Dated: New York - For SDNY BANKRUPTCY COURT

January 26, 2016

Jason P Brand, Plaintiff